UNITED STATES DISTRICT COURT  ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HERBERT TAYLOR,

              Plaintiff,                                    MEMORANDUM
  -against-                                                          AND ORDER
                                                                         08-CV-1494 (JG)

W. ZERILLO (warden); B.A. JOHNSON (officer);
T.C. ROBINSON (officer); HINES (officer),

              Defendants.
----------------------------------------------------------------X
A P P E A R A N C E S:

    HERBERT TAYLOR
        #56909-054
        United States Penitentiary-Lee County
        P.O. Box 305
        Jonesville, VA 24263-0305
        Plaintiff, *Pro Se*

    MCCARTHY LAW FIRM, PLLC
        1120 Avenue of the Americas
        Suite 4006
        New York, NY 10271
    By:    John Joseph McCarthy
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        Herbert Taylor, currently incarcerated at the United States Penitentiary in Jonesville, Virginia, brings this *pro se* action alleging violations of his constitutional and state law rights. The action was filed in the United States District Court for the Southern District of New York and transferred to this court on March 27, 2008. For the reasons stated below, I deny defendants' motion to dismiss.

## BACKGROUND

        Taylor alleges that on August 24, 2006, while detained at the Queens Private

1

Detention Facility ("QPDF"),[1] he "was assaulted . . . [b]y several inmates in the D-block housing unit." Amended Compl. 3. He claims that his assailants all belonged to the same prison gang, and that no officers were present when he was assaulted because of a staff shortage. *Id.* In a memorandum and order dated May 9, 2008, I dismissed Taylor's action arising from this incident for failure to state a claim against the inmate defendants, QPDF, and Warden W. Zerillo. I granted Taylor 30 days to file an amended complaint naming the prison officials who displayed "deliberate indifference" to his plight pursuant to *Farmer v. Brennan*, 511 U.S. 825 (1994), and providing a plain statement of how each named defendant was deliberately indifferent to his safety. *Id.* at 5. Taylor filed an amended complaint naming Warden Zerillo and three QPDF officers as defendants. The amended complaint also indicates that Taylor did not file an administrative grievance regarding his assault. Amended Compl. 4. Defendants moved to dismiss, arguing that Taylor has failed to exhaust his administrative remedies and failed to plead that the defendants were personally involved in the alleged violation of Taylor's rights. Defs.' Mem. In Supp. of Mot. to Dismiss ("Defs.' Mem.") 5-8.

## DISCUSSION

A.   *Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). Accordingly, I must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). However, I do not give

---

[1] QPDF is located in Jamaica, Queens and is run by the GEO Group, Inc. which is under contract with the United States Immigration and Customs Enforcement and the United States Marshals Service to provide

2

effect to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). Generally, "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "'fair notice of what the . . . claim is and the grounds on which it rests.'" *Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964).

B.  Construction of Taylor's Complaint

As the Second Circuit has frequently advised, the filings of pro se litigants should be construed "liberally" and read "to raise the strongest arguments they suggest." *Ferran v. Town of Nassau*, 471 F.3d 363 (2d Cir. 2006). Taylor contends that Warden Zerillo and the other named defendants should have protected him from attack, and their failure to do so renders them liable for the damage he suffered. His memorandum responding to defendants' motion to dismiss cites both Eighth Amendment cases and New York state cases involving the tort of negligent supervision. Under these circumstances, I construe Taylor's complaint as arguing that the named defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they "exposed a prisoner to a sufficiently substantial risk of serious damage to his future health" with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).[2] His complaint also alleges that defendants' negligence constitutes a breach of their state law "duty of care to safeguard inmates," which includes a duty to protect against

---

detention services.

[2]  At this point in the proceedings, it is unclear which law provides Taylor with a private right of action to pursue his constitutional tort claim against these defendants. At various points in their pleadings, both parties alternatively assert that his action is brought under 42 U.S.C. § 1983 or pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and my initial order was similarly ambiguous. Because defendants do not assert that a right of action does not lie under either Section 1983 or *Bivens* in their initial memorandum, and only raise the argument that *Bivens* does not permit suits against individual employees of a federal contractor in their reply brief, Defs.' Reply Mem. 3, I see no need to resolve the ambiguity now. The parties do not dispute that Taylor has a right of action for his state law tort claim, and the proof of that claim is sufficiently similar to the proof required for Taylor's Eighth Amendment claim that it makes sense to allow both claims to proceed.

"attacks by fellow inmates." *Sanchez v. New York*, 99 N.Y.2d 247, 252 (2002). Accordingly, I will consider defendants' arguments as they bear on each of these claims.

C.     Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has clarified that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirements also apply to a plaintiff seeking relief not available in the prison administrative proceeding, such as monetary damages. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001).

> The exhaustion requirement, however, is not absolute:
>
> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (internal citations omitted). On the issue of estoppel, the Second Circuit has held that where a plaintiff alleges "that prison officials prevented him from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility," he has raised a plausible claim that the defendant officials should be estopped from asserting exhaustion as a defense. *Hemphill* at 688 (summarizing *Ziemba v.*

4

*Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)).

In this case, Taylor concedes that he did not file any administrative grievance, and he does not dispute that the QPDF provides a grievance process. However, he contends that he was not told about the procedure, was not given any grievance forms, and was transferred from prison to prison to "hinder" his filing a grievance. Amended Compl. 4. He also claims that he complained to the warden in writing but received no response. *Id.* at 4; Pl.'s Opp. Mem. 6-7. These allegations are sufficiently similar to the circumstances in *Ziemba* to suggest that plaintiff has a plausible estoppel argument.

In response, defendants argue that Taylor submitted no evidence of his written grievance to the warden. At this stage in the pleadings, however, Taylor does not have to submit evidence in support of his allegations; his allegation that he submitted an informal grievance suffices. In addition, defendants fail to address Taylor's contention that he, like the *Ziemba* plaintiff, was transferred in order to prevent his compliance with internal grievance procedures. Accordingly, because I conclude that evaluation of Taylor's estoppel argument "will require [me] to look beyond the pleadings and the documents attached to the pleadings, [I] must allow factual development and address the estoppel claim at the summary judgment stage." *Ziemba*, 366 F.3d at 164.

D.  *The Sufficiency of Taylor's Claims*

In a supplemental document submitted with his amended, standard-form complaint ("Compl. Supp."),[3] Taylor alleges that Warden Zerillo "failed to provide security, [and] maintain proper staff levels," and that this failure to supervise caused Taylor's assault.

---

[3] Although this document ("Amended Complaint Jurisdiction Requirements for Adjudication of Civil Suit, and Nameing [*sic*] Proper Legal Defendants, Acting Under Color of Law") contains both factual allegations and legal arguments, defendants treat its allegations as part of Taylor's amended complaint, and I see no reason to do otherwise.

5

Compl. Supp. 3. These allegations did not appear in Taylor's initial complaint, which I dismissed with respect to Warden Zerillo because it appeared that he was only sued "in his advisory capacity as the warden and not because he had any personal involvement in the alleged attack." May 9 Mem. and Order 4. Thus, the amended complaint alleges not just that the officers Zerillo supervised acted (or failed to act) with negligence or deliberate indifference, but that the warden himself did so, because he knew about the staff shortage and the risk it posed but did nothing about it. This contention suffices to remedy the defect identified in my May 9, 2008 memorandum and order.

Taylor alleges that Officer B.A. Johnson "is personally responsible for failing to stop assault, not providing proper documentation of incident, and not covering unit at all times with staff presence." Compl. Supp. 4. While the allegation regarding documentation seems irrelevant to Taylor's claims, the allegation that Johnson failed to "cover[]" D Block suggests that he was responsible for ensuring that the unit was properly staffed and failed to do so. If this contention is true, Taylor could introduce evidence to demonstrate that Officer Johnson deliberately disregarded a substantial risk to Taylor's safety.

According to Taylor, T.C. Robinson, another officer, "is personally responsible for failing to be in unit an [*sic*] supervise inmates. He was giving out commissary instead of supervising unit." *Id.* In other words, Taylor alleges that Officer Robinson was supposed to be in D Block at the time of the assault, but was elsewhere. Similarly, Officer Hines[4] "was assigned to 'D' Unit, to provide staff coverage," and to sound an alarm in case of trouble, but "wasn't on her post" during the attack.[5] *Id.* Once again, these allegations, supported with proper evidence,

---

[4] Defendants' papers refer to this defendant as "Hyde." Defs.' Mem. 7.
[5] Defendants assert that plaintiff's allegations as to Hines are "inconsistent," Defs.' Mem. 7, because he alleges that Hines was "assigned" to the unit and "saw" the assault, but "didn't appear until the attack was over." While this allegation is somewhat opaque, it would be reasonable to infer that Hines was charged with

6

could sustain a finding that either Robinson or Hines (or both) also acted with deliberate indifference or negligence, and that their actions caused the harm suffered by Taylor.

Defendants contend that Taylor's complaint should be dismissed because he has failed to show that any of the defendants were "*personally involved* in the alleged constitutional violations." Defs.' Mem. 6. Specifically, they contend that because none of the named defendants were physically present during the alleged assault, they could not have been personally involved in any violations of Taylor's rights arising from that incident. They rely on language from *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006), stating that "[b]ecause the doctrine of *respondeat superior* does not apply in *Bivens* [or Section 1983] actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."

Defendants' physical remoteness from the assault does not, as a matter of law, preclude their personal involvement in the alleged violation of Taylor's rights. As *Thomas* instructs:

> The personal involvement of a supervisory defendant may be shown by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.

*Id.* at 496-97. Clearly, a corrections officer who is present and does nothing when one inmate assaults another inmate directly participates in the violations arising from that assault -- this "participation" is the basis for the Eighth Amendment tort at issue in *Farmer* and the state law negligent supervision tort in *Sanchez*. It follows that an officer who should have been present but was not could also be a direct participant. It would be an odd rule of liability that punished

---

remote surveillance of the unit and was negligent in that regard. In any event, the allegations suffice to give Hines fair notice of Taylor's claim against her. *Erickson*, 127 S. Ct. at 2200.

the officer who fell asleep at his post but excused the officer who failed to show up at all, and I do not read the "direct involvement" language in cases like *Thomas* to require this result. Accordingly, because Taylor alleges that both Robinson and Hines should have been present to prevent the assault but were not, he has satisfactorily alleged their direct involvement.

Similarly, Taylor's allegation that Warden Zerillo knew D Block was short-staffed but failed to adjust staffing levels suggests that the warden was directly involved because he was the author of a policy which "foster[ed]" the violation at issue. *Thomas*, 470 F.3d at 496. Finally, because he alleges that Officer Johnson's supervisory failure to ensure that D Block was properly staffed, Taylor could show that Johnson was "grossly negligent in supervising subordinates who caused the violation." *Id*. In short, Taylor's amended complaint does not seek to hold the defendants vicariously liable for the negligence of their subordinates; he alleges that each defendant's own negligence or indifference contributed to harm he suffered. He may ultimately be unable to prove such negligence or indifference, but defendants have failed to demonstrate any reason why he should not be permitted to try.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: November 10, 2008
      Brooklyn, New York

8